**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| AYODEJI OSHIKOYA, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-00896-LMB-MSN |
| LEIDOS HEALTH, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO TRANSFER VENUE**

Defendant Leidos Health, LLC ("Leidos Health"), by counsel, respectfully submits this memorandum of law in support of its motion to transfer this case to the U.S. District Court for the Southern District of Indiana, Indianapolis Division, pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

Plaintiff Ayodeji Oshikoya filed this putative collective and class action against Leidos Health alleging that he is an employee who has been misclassified as an independent contractor in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count I) and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.* (Count II).

Plaintiff elected to bring this action in a judicial district where: (1) Plaintiff himself does not reside; (2) Plaintiff performed none of the work at issue in this case; (3) Defendant Leidos Health does not have any employees or maintain records; (4) no material third-party witnesses are known to reside; and (5) the factual events challenged in the Complaint did not occur.

1

Whereas this case has virtually no meaningful connection to the Eastern District of Virginia, it has significant ties to the Southern District of Indiana. As described below, the factors governing motions to transfer venue under § 1404(a) lead to the ineluctable conclusion that this case should be transferred to the Southern District of Indiana. Indeed, Plaintiff concedes that the Southern District of Indiana is the proper forum for this action by alleging in paragraph 3 of the Complaint that he and putative other class members "performed work for Leidos *in Indianapolis, Indiana, in this judicial district*, and were paid pursuant to Leidos' unlawful pay policy *in this judicial district*, and Leidos routinely conducts business *in this judicial district*." Compl. ¶ 3 (emphasis added).

Plaintiff may argue that the Eastern District should retain this case because of its fast-paced docket. This Court has expressly recognized that while the efficiency of its docket "may be particularly attractive to plaintiffs in complex litigation . . ., [it] also invites forum-shopping." *Pragmatus AV, LLC v. Facebook, Inc.,* 769 F. Supp. 2d 991, 996 (E.D. Va. 2011) (Brinkema, J.) (citing *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000)). Consequently, "[w]hen a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'" *Pragmatus*, 769 F. Supp. 2d at 997 (quoting *Original Creatine Patent Co., Ltd. v. Met–Rx USA, Inc.,* 387 F. Supp. 2d 564, 572 (E.D. Va. 2005)). One Judge within this District put it this way:

> As noted by the EDVA many times over, "[t]his Court cannot stand as a willing repository for cases which have no real nexus to this district." *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000). "The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner." *Id.* "In other words, this Court should not allow itself to be overrun by a horde of Visigoths who simply want quick results."

*Intercarrier Communications, LLC v. Glympse, Inc.*, No. 3:12-CV-767, 2013 WL 4083318, at *6 (E.D.Va. Aug. 12, 2013).

*Phillips v. Uber Techs., Inc.*, No. 3:15-CV-544-JAG, 2016 WL 165024, at *3 (E.D. Va. Jan. 13, 2016) (Gibney, J.).

Accordingly, for the reasons set forth in this memorandum, Defendants respectfully request that this case be transferred to the Indianapolis Division of the U.S. District Court for the Southern District of Indiana.

## FACTUAL BACKGROUND

### *Overview Of The Leidos Health "Go Live Support" Business*

Leidos Health, LLC ("Leidos Health") is engaged in the business of providing information technology support and consulting services for commercial health care providers such as hospital systems and doctors' offices. Dermott Decl. ¶ 1. In 2011, the company hired Mark Dermott to start up its Go-Live Support ("GLS") business. *Id.* ¶ 9. The GLS business supports commercial medical providers as they go through the process of converting their records into digital format. *Id.* ¶ 10. Medical providers purchase proprietary electronic medical records ("EMR") software from vendors such as Epic, Meditech, Cerner, McKesson, and All-Scripts. *Id.* These vendors offer a wide variety of software modules designed for use in specific clinical settings, such as emergency rooms or radiology, and can customize products to suit the unique needs of a particular organization. *Id.*

When medical providers implement or "go live" with their new EMR software, they often need a good deal of on-site technical support on a short-term basis. *Id.* ¶ 11. Successful "elbow support" consultants must understand the particular EMR software that the medical provider has purchased, must be familiar with the clinical setting in which the software is being used, and must be able to communicate effectively with the staff members they are supporting. *Id.* There

are a number of self-employed "elbow support" consultants who travel around the country and provide these services on a project-by-project basis.  *Id.* ¶ 12.

The Leidos Health GLS business helps medical providers find the right independent elbow support consultants to support their go-live projects.  *Id.* ¶ 13.  Depending on its size, a medical provider may need hundreds of consultants with a range of specific software and clinical skills to travel to a particular location and provide intensive support for a short period of time.  *Id*.  Independent elbow consultants are not "captive" to Leidos in any sense of the word.  *Id.* ¶ 14.  They are free to accept projects for GLS providers other than Leidos, and many choose to do so.  *Id.*

### *Basic Organization of the Leidos GLS Business*

The GLS process begins when a medical provider contracts with Leidos Health to provide support for a go-live process.  *Id.* ¶ 15.  The customer identifies what EMR software it has purchased, the locations and clinical settings where the roll-out will occur, the number of users who will need support, the dates when GLS support will be needed, and any other project-specific requirements.  *Id*.  The GLS Recruiting team then emails the independent consultants in its database describing the customer's project and inquiring as to their availability.  *Id.* ¶ 16.  Project openings typically are offered to qualified consultants on a first come, first served basis.  *Id*.

The Contracts team is responsible for preparing a template Master Services Agreement ("MSA") and Work Order form for the project.  *Id.* ¶ 18.  The Contracts team is led by Melanie Sloan, who is based in Westfield, Indiana.  *Id*.  When an independent consultant agrees to accept a project, his or her GLS Recruiter fills out an on-boarding sheet and passes it to the On-Boarding team.  *Id.* ¶ 19.  The GLS On-Boarding team is responsible for ensuring that the

independent consultant signs the appropriate MSA and Work Order agreements, using the templates provided by the Contracts team. *Id*. The GLS On-Boarding team also verifies that the independent consultants have the proper qualifications to perform the contract. *Id*. The GLS On-Boarding team reports to Functional Team Lead Stacy Daughtery, who is based in Westfield, Indiana. *Id*. The Billing team assists the independent consultants with making travel and hotel accommodations, as well as processing and issuing all payments to independent consultants. *Id.* ¶ 20. The Billing team is based in Westfield and reports to Ms. Daughtery. *Id*.

The GLS Project Management team oversees customer go-live projects after they begin. *Id.* ¶ 21. Generally, it is responsible for addressing any issues that customers or consultants may raise during an active go-live engagement. *Id*. The GLS Project Management team is headed by Janet Aduana, who works remotely from her home in Plano, Illinois. *Id*.

Leidos Health does not provide any training to its independent consultants. *Id.* ¶ 17. The Company only recruits independent consultants who have an established track record of providing go-live elbow support through other GLS providers, and it expects its consultants to be familiar with a customer's basic EMR software before accepting a project. *Id*. When GLS consultants arrive at a customer site, they typically participate in an orientation program provided by the customer itself. *Id.* ¶ 22. During this orientation, the customer might provide a tour of the facilities, describe applicable rules or regulations (including any rules pertaining to dress code or contractor identification), and review any modifications that it might have ordered to the standard vendor EMR software package. *Id*.

*Corporate History of Leidos Health*

Leidos Health is a Delaware corporation that was formed in March 2001 with its only offices located at 705 East Main Street, Westfield, Indiana. *Id.* ¶ 2.[1] At the time of its formation, Leidos Health was called maxIT Healthcare, LLC ("MaxIT"). *Id.* MaxIT was acquired by Science Applications International Corporation ("SAIC") in August 2012, but retained its name and continued to operate from its offices in Westfield, Indiana. *Id.* ¶ 3. In September 2013, SAIC spun off certain assets and changed its name to Leidos Holdings, Inc. ("Leidos Holdings"), a Delaware corporation with its corporate headquarters in Reston, Virginia. *Id.* ¶ 4. MaxIT emerged from that transaction as a subsidiary of Leidos Holdings, and in October 2013 it was renamed Leidos Health. *Id.* Throughout this process, Leidos Health continued to operate from its offices in Westfield, Indiana. *Id.* ¶ 5. In corporate filings, it identified its principal place of business as Westfield, Indiana. *Id.*

In 2016, Leidos Health began identifying its principal place of business as Reston, Virginia in corporate filings in order to align with the overall organizational structure of the Leidos businesses. *Id.* ¶ 6. In practice, however, Leidos Health continues to operate primarily from its offices in Westfield, Indiana with minimal support from the Leidos corporate offices in Reston. *Id.* Leidos Health employs approximately 40 people at its offices in Westfield, and none of its employees maintain offices in Virginia. *Id.* ¶ 7. Several Leidos Health employees work remotely from their homes, but none work from homes located in Virginia. *Id.* The computer systems and business records of Leidos Health are primarily located in Westfield,

---

[1] Westfield is located in Hamilton County, Indiana, and therefore lies within the Southern District of Indiana, Indianapolis Division. 28 U.S.C. § 94(b)(1) (listing counties in the Southern District of Indiana, Indianapolis Division).

Indiana.  *Id.* ¶ 8.  Jeff Martz, the Vice President for Information Systems, is based in Westfield. *Id.*

### Plaintiff Ayodeji Oshikoya

Plaintiff Ayodeji Oshikoya is a GLS consultant who accepted nine projects with Leidos Health between January 2013 and June 2016.  Compl. ¶ 4; Aduana Decl. ¶ 5.  **Mr. Oshikoya does not reside in Virginia and performed no consulting work for Leidos Health in Virginia**. Rather, Plaintiff resides in Grand Prairie, Texas, and he accepted projects in the states of Indiana, Michigan, North Carolina, South Carolina, and Pennsylvania.  Compl. ¶ 4; Aduana Decl. ¶ 5.

## APPLICABLE LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 699 (2003) (recognizing that FLSA claims are subject to venue analysis under 28 U.S.C. § 1404(a)).  In considering a motion to transfer venue under Section 1404(a), a district court must first determine whether the transferor and proposed transferee courts are both venues in which the claims properly could have been brought.  *Pragmatus,* 769 F. Supp. 2d at 994 (citing *Agilent Tech., Inc. v. Micromuse, Inc.,* 316 F. Supp. 2d 322, 324–25 (E.D. Va. 2004) (citation omitted)); *see also Newman v. Advanced Tech. Innovation Corp.*, No. 1:12CV24 JCC/TRJ, 2012 WL 1414859, at *2 (E.D. Va. Apr. 20, 2012).  Following these threshold inquiries, district courts in the Fourth Circuit consider four factors when deciding whether to transfer venue:  "(1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Vir2us, Inc. v. Cisco Sys., Inc.*, No. 1:16-CV-01095, 2016 WL 9175603, at *1 (E.D. Va. Dec. 2, 2016) (citing *Trustees of the*

*Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015)). "The movant carries the burden of establishing the propriety of the transfer request and the ultimate decision is committed to the sound discretion of the district court." *Pragmatus,* 769 F. Supp. 2d at 994 (citing *Agilent Tech., Inc.*, 316 F. Supp. 2d at 325).

The purpose of Section 1404 "is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co v. The FBL-585*, 364 U.S. 19, 21 (1960)). Section 1404(a) gives district courts discretion to adjudicate motions to transfer using an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988).

## ARGUMENT

### I.   Plaintiff Could Have Brought This Action In The Southern District Of Indiana.

A District Court may transfer a civil case "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A civil action may be brought in . . . the judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]" 28 U.S.C. § 1391(b)(1). For purposes of venue, a defendant corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction[.]" *Id*. at § 1391(c)(2).

Plaintiff could have brought this case in the Southern District of Indiana because Leidos Health is subject to personal jurisdiction in that forum. Indiana's long-arm statute gives its courts personal jurisdiction over non-resident litigants to the fullest extent permitted by the Due Process Clause. *See Dunlap v. Switchboard Apparatus, Inc.*, No. 1:12-CV-20-TWP-DKL, 2012 WL 1712554, at *2–3 (S.D. Ind. May 15, 2012) (recognizing that Indiana's long-arm statute,

Indiana Rule of Trial Procedure 4.4(a), gives its courts personal jurisdiction to fullest extent consistent with constitutional due process) (citing *LinkAm. Corp. v. Albert,* 857 N.E. 2d 961, 967 (Ind. 2006)).  Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  These minimum contacts "must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'"  *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,* 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).  Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign.  *Burger King,* 471 U.S. at 472.  "A court may exercise specific jurisdiction 'when the cause of action arises out of the defendant's contacts with the forum.'"  *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) (quoting *Base Metal Trading*, 283 F.3d 208, 213 (4th Cir. 2002)).

Leidos Health is subject to personal jurisdiction in the Southern District of Indiana because the Company has maintained offices there since its formation in 2001.  Dermott Decl. ¶¶ 2-5.  It currently employs approximately forty people in Westfield, and its records reside on servers located there.  *Id*. ¶¶ 7-8.  It vets the qualifications of GLS consultants, enters into contracts with GLS consultants, and issues payments to GLS consultants from its offices in Westfield.  *Id.* ¶¶ 18, 19.  From 2001 until 2016, the Company identified Westfield as its principal place of business (*id.* ¶ 5), and it maintains a registered agent in Indiana to this day (Compl. ¶ 5).  Moreover, Leidos Health is voluntarily submitting itself to personal jurisdiction in the Southern District of Indiana by moving to transfer this case to that district.  *See Killearn*

*Properties, Inc. v. Lambright*, 176 Ind. App. 684, 686, 377 N.E.2d 417, 419 (1978) (act of seeking affirmative relief from court amounted to voluntary submission to its personal jurisdiction) (*discussing Nesbit v. Long*, 37 Ind. 300 (Ind. 1871)).  Because Leidos Health has sufficient contacts with the Southern District of Indiana to be subject to personal jurisdiction in that forum, the Southern District of Indiana is a judicial district in which this case could have been brought.[2]

## II.    The Four Factors Used To Evaluate Transfer Motions Under 28 U.S.C. § 1404(a) Strongly Favor Transfer Of This Case To The Southern District Of Indiana.

Applying the factors that this Court uses to evaluate a motion to transfer venue under 28 U.S.C. § 1404(a), it is abundantly clear that this case should be transferred to the Southern District of Indiana.

### A.    Plaintiff's Choice Of Forum Is Not Entitled To Deference Because He Has No Connection With The Eastern District Of Virginia.

The Court's deference to a plaintiff's choice of forum "varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." *Pragmatus*, 769 F. Supp. 2d at 995 (quoting *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.,* 702 F. Supp. 1253, 1256 (E.D. Va. 1988)).  "[T]he greater the connection between a plaintiff's chosen forum and the plaintiff's cause of action, the more weight a court will give to the plaintiff's choice." *CIVIX-DDI, LLC v. Loopnet, Inc.*, No. 2:12-CV-2, 2012 WL 3776688, at *3 (E.D. Va. Aug. 30, 2012) (quoting *Agilent Tech.*, 316 F. Supp. 2d at 327, and *GTE Wireless, Inc. v. Qualcomm, Inc.,* 71 F. Supp. 517, 519 (E.D. Va. 1999)).  Typically, a plaintiff's choice of forum is given substantial weight where "the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action." *Pragmatus*, 769 F.

---

[2] Leidos Health does not dispute that it is also subject to personal jurisdiction in the Eastern District of Virginia.

Supp. 2d at 995 (quoting *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010)).  Conversely, "the plaintiff's choice of forum is not entitled to substantial weight if the chosen forum is not the plaintiff's 'home forum,' and the cause of action bears little or no relation to the chosen forum."  *Newman*, 2012 WL 1414859, at \*2 (quoting *Lycos, Inc. v. TiVo, Inc.,* 499 F. Supp. 2d 685, 692 (E.D. Va. 2007)).

In this case, the Court owes no deference to the Plaintiff's choice of forum because he does not reside in Virginia and his cause of action does not have a "substantial relationship" with this District.  Plaintiff lives in Grand Prairie, Texas, and he performed the GLS consulting work at issue in this case in the states of Indiana, Michigan, North Carolina, South Carolina, and Pennsylvania.  Compl. ¶ 4; Aduana Decl., ¶ 5.  Consequently, Plaintiff has no basis for asserting that the Eastern District of Virginia is his "home forum."

Other than alleging that Leidos Health maintains its principal office at 11951 Freedom Drive, Reston, Virginia (Compl. ¶ 5), Plaintiff's Complaint contains no specific factual allegations to support the conclusory assertion that a "substantial part of the events giving rise to Plaintiff's and Class Members' claims occurred within [the Eastern District of Virginia]" (Compl. ¶ 3).  The fact is that Leidos Health employs approximately forty people at its offices in Westfield, and none of its employees maintain offices or work remotely from homes in Virginia.  Dermott Decl. ¶ 7.  From its formation in 2001 through 2016, Leidos Health identified its principal place of business as 705 East Main Street, Westfield, Indiana.  *Id*. ¶¶ 2-6.  Although the Company began using a Reston address in its corporate filings in 2016, it continues to operate primarily from its offices in Westfield with minimal support from the Leidos corporate offices in Reston.  *Id.* ¶ 6.  In this context, Leidos Health's recent corporate filings are wholly insufficient to give Plaintiff's cause of action a "substantial relationship" with the Eastern District of Virginia

11

for purposes of the venue analysis under § 1404(a).  *See Bascom Research, LLC v. Facebook, Inc.*, No. 1:12-CV-1111-LMB-JFA, 2012 WL 12918407, at *1 (E.D. Va. Dec. 11, 2012) (plaintiff had only "tenuous" connection with Eastern District of Virginia, and its decision to proceed in that forum deserved only "minimal weight," where plaintiff was incorporated in Virginia but had no facilities, operations, offices, or employees in the Eastern District); *ComRent Int'l, LLC v. Palatini*, No. CIV.A. 13-5732, 2013 WL 5761319, at *3 (E.D. Pa. Oct. 24, 2013) (explaining that venue analysis does not hinge on the defendant's designated "principal place of business" but rather on the actual location of the events or omissions giving rise to the claim). Given that Plaintiff elected to bring this action in a foreign district with no meaningful connection to his case, his choice of forum carries no weight.  *General Tire & Rubber Co. v. Watkins,* 373 F.2d 361, 369 (4th Cir. 1967) ("[f]orum shopping must not be indulged . . . where, as here, the shopper is offered an equally convenient forum"), *cert. denied,* 386 U.S. 960 (1967).[3]

## B.      The Convenience Of The Parties Heavily Favors Transfer.

This factor heavily favors transfer.  "When evaluating this factor [the convenience of the parties], the logical starting point is a consideration of the residence of the parties."  *Joyner v. Solvay Pharm., Inc.*, No. 3:10-CV-36-HEH, 2010 WL 2163876, at *3–4 (E.D. Va. May 27, 2010) (quoting *JTH Tax, Inc.,* 482 F. Supp. 2d 731, 738 (E.D. Va. 2007).  "[G]reater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue."  *Newman*, 2012 WL 1414859, at *4 (quoting

---

[3] Moreover, the Plaintiff's choice of forum should be accorded less deference when he or she is seeking to represent a group of individuals in a putative class or collective action.  *See e.g.*, *Vassallo v. Goodman Networks, Inc.,* No. 5:14–CV–743–DAE, 2015 WL 502313, at *2 (W.D. Tex. Feb.5, 2015) (granting motion to transfer venue in FLSA collective action) (citing *Koster v. Am. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524 (1947) (reasoning, in the context of doctrine of forum *non conveniens*, that "where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the . . . cause of action . . . the claim of any one plaintiff that a forum is appropriate . . . is considerably weakened").

*Bd. of Trs., Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1258).   "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of the evidence and the degree of inconvenience." *Newman*, 2012 WL 1414859, at *4 (*quoting Koh v. Microtek, Int'l, Inc.,* 250 F. Supp. 2d 627, 636 (E.D. Va. 2003)).   Courts may also consider "access to sources of proof, costs of obtaining witnesses, and the availability of compulsory process." *Vir2us, Inc.*, 2016 WL 9175603, at *2 (concluding that convenience of the parties favored transfer where parties and defendant's servers were located in foreign forum).

### 1.    Plaintiff Has No Connection With The Eastern District Of Virginia.

Plaintiff himself is a resident of Texas and has no evident connection with the Eastern District of Virginia.  Consequently, his residence does not weigh against transfer.

### 2.    The Convenience Of Leidos Health Witnesses Favors Transfer.

The convenience of Leidos Health's material witnesses, by contrast, weighs heavily in favor of transfer.  The ultimate issue in this case is whether Leidos Health properly treated the GLS consultants as independent contractors rather than employees under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the Pennsylvania Minimum Wage Act, 43 Penn. Stat. § 333.104(c).  To determine whether a worker is an employee or an independent contractor under the FLSA, the Fourth Circuit applies a six-factor test designed to capture the "economic realities" of the relationship between the worker and the putative employer.   *Hall v. DIRECTV, LLC*, 846 F.3d 757, 774 (4th Cir. 2017).  These factors include:  "(1) the degree of control that the putative employer[s] ha[ve] over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the

13

degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer[s'] business." *Id.* (quoting *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304-05 (4th Cir. 2006)).  The same six-factor "economic realities" test applies to independent contractor misclassification cases arising under the Pennsylvania Minimum Wage Act.  *See Sherman v. Am. Eagle Exp., Inc.*, No. CIV.A. 09-575, 2012 WL 748400, at *11 (E.D. Pa. Mar. 8, 2012) (discussing *Commonwealth, Dep't of Labor & Indus. v. Stuber,* 822 A.2d 870, 873 (Pa. Commw. Ct .2003), *aff'd,* 580 Pa. 66, 859 A.2d 1253 (Pa.2004)).[4]

Leidos Health anticipates that several key managers will be important witnesses regarding the issues in this case, each of which is discussed below.

## **Mark Dermott**

Mr. Dermott created the GLS practice at Leidos Health in 2011 and has led the practice ever since.  Dermott Decl. ¶ 10.  Mr. Dermott can provide evidence regarding the history, organization, and operation of the GLS business; sales and pricing; and the decision to classify go-live elbow support consultants as independent contractors rather than employees.  *Id.* ¶ 24.

Mr. Dermott believes that it would be more convenient to travel to Indianapolis than to Alexandria for any pre-trial and trial proceedings.  *Id.* ¶ 25.  Mr. Dermott works remotely from his home in Crystal Lake, Illinois, and the nearest airport to his home is Chicago's O'Hare Airport.  *Id.* ¶¶ 10, 26.  The flight time from O'Hare to Indianapolis is slightly less than one hour, but the flight time to Washington National Airport is nearly two hours.  *Id.* ¶ 26.  The

---

[4] The Seventh Circuit also looks to "economic realities" to determine whether a worker is an employee or independent contractor, but it has rejected the strict application of any particular multifactor test in favor of a more flexible standard that captures the "true nature of the relationship" between a worker and putative employer.  *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290–91 (7th Cir. 2016) (applying *Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992)).

distance from Crystal Lake to Indianapolis is 231 miles, with an estimated driving time of 3 hours 52 minutes, whereas the distance to Alexandria is 764 miles with an estimated driving time of 12 hours. *Id.* ¶ 27. Consequently, if this case were transferred to Indianapolis, Mr. Dermott could drive there on relatively short notice, avoid potential airport delays, avoid renting a car, and work from the Leidos Health offices in Westfield. *Id.*

### **Janet Aduana**

Ms. Aduana is the Director of GLS Project Management for Leidos Health and has served in that capacity since 2011. Aduana Decl. ¶¶ 1, 2. The GLS Project Management team oversees customer go-live projects after they begin. *Id.* ¶ 3. This involves responding to requests or concerns that may be raised by customer, as well as addressing issues that might arise with consultants. *Id.* For example, the GLS Project Management Team would be responsible for such things as fulfilling a hospital's request for additional elbow support consultants in a particular department, or tracking down consultants who fail to show up for the job. *Id.* Ms. Aduana also assists customers in planning the specific details of go-live engagements before they begin. *Id.* ¶ 4. Ms. Aduana is familiar with the specific GLS consulting projects that Plaintiff accepted with Leidos Health. *Id.* ¶ 5. Ms. Aduana is also familiar with the process for terminating independent consultant contracts. *Id.* ¶ 6. In fact, she signed the letter terminating Mr. Oshikoya's Master Services Agreement on June 2, 2016. *Id.*

Ms. Aduana can provide evidence regarding the history, organization, and operation of the Leidos Health GLS business; the process of planning and supporting customer go-live engagements; the relationship between Leidos Health and the independent consultants with which it contracts; the decision to classify go-live elbow support consultants as independent

contractors rather than employees; and the specific projects that Plaintiff Ayodeji Oshikoya accepted.  *Id.* ¶ 7.

Ms. Aduana works remotely from her home in Plano, Illinois.  *Id.* ¶ 8.  She believes it would be far more convenient to drive from her home in Plano to Indianapolis than to fly or drive to Alexandria.  *Id.* ¶¶ 9, 10.  The nearest airport to her home is O'Hare, but it is a 52-mile drive that can take over an hour.  *Id.*  The distance from her home to Indianapolis is only 232 miles, with an estimated driving time of 3 hours and 45 minutes.  *Id.*  Consequently, she could drive to Indianapolis more quickly than she could fly to Washington, and she could do so without the expense and inconvenience of airline travel.  *Id.*

### **Stacey Daughtery**

Ms. Daughtery is employed by Leidos Health, LLC ("Leidos Health") as the Functional Team Lead for the Billing and GLS On-Boarding Teams.  Daughtery Decl. ¶ 1.  The GLS On-Boarding Team is responsible for working with GLS independent consultants to confirm that they have met the requirements for a given GLS project.  *Id.* ¶ 2.  This would include making sure the GLS contractors have signed any necessary forms and agreements, taken any medical tests required to work in a health care facility, passed a background check, and satisfied any other customer-specific project requirements.  *Id.* ¶ 2.  The Billing Team is responsible for notifying GLS contractors about project-specific procedures or guidelines for the reimbursement of expenses and processing payments.  *Id.* ¶ 3.  All members of the Billing Team are based at the Leidos Health offices in Westfield, and all payments to GLS contractors are issued from Westfield.  *Id.* ¶ 3.  As the Functional Team Lead for GLS On-Boarding and Billing, Ms. Daughtery can provide evidence regarding the organization and operation of the GLS business, the process for qualifying GLS consultants to work on specific customer projects,

customer-specific expense reimbursement procedures, and payments issued to GLS consultants. *Id.* ¶ 4.

Ms. Daughtery is based at the Leidos Health offices in Westfield, Indiana. *Id.* ¶ 1. Westfield is a suburb of Indianapolis, and the Leidos Health offices are located only 21 miles from the U.S. District Court for the Southern District of Indiana. *Id.* ¶ 5. Accordingly, it would be far more convenient for Ms. Daughtery to appear for pre-trial or trial proceedings in Indianapolis than in Alexandria, Virginia. *Id.* ¶ 5.

### Melanie Sloan

Ms. Sloan is the Senior Contract Administrator for Leidos Health, and she has been with the Company since 2012. *Id.* ¶ 1. The Contracts team is responsible for preparing template Master Services Agreements and Work Order forms for independent consultants who accept GLS projects. *Id.* ¶ 2. As Senior Contract Administrator, Ms. Sloan can provide evidence regarding the history, organization, and operation of the GLS business. *Id.* ¶ 4. She can also provide evidence regarding preparation of the contracts that Leidos Health enters into with independent GLS consultants. *Id.* ¶ 4.

Ms. Sloan and her team are based in Westfield, Indiana. *Id.* ¶ 3. Consequently, it would be more convenient for her to appear for trial in Indianapolis than in Alexandria, Virginia. *Id.* ¶ 5.

### Additional Defense Witnesses

Leidos Health currently is unaware of any material witnesses who reside in Virginia. The Company may rely on the testimony of managerial employees who work remotely from their homes in states other than Indiana or Virginia, but these individuals do not impact the choice of

venue one way or the other because the burden of traveling to Alexandria would be roughly the same as the burden of traveling to Indianapolis.

### 3.    Access To Sources Of Proof

The Complaint does not identify any evidence or sources of proof located in Virginia, and Leidos Health is aware of none.  By contrast, the computer systems and business records of Leidos Health are located primarily in Westfield, Indiana.  Dermott Decl. ¶ 8.  Consequently, this factor favors transfer to the Southern District of Indiana.

### C.    The Convenience Of Non-Party Witnesses Favors Transfer.

Although it remains to be seen exactly what third-party discovery may be necessary in this case, any consideration of non-party witnesses at this point favors transfer.  Plaintiff did not perform any go-live engagements for Leidos Health in Virginia, but he accepted three such projects for the Franciscan Alliance in Indiana—and two of these were located in the Southern District of Indiana.   Compl. ¶ 4; Aduana Decl. ¶ 5.[5]   The medical facilities where Plaintiff performed his go-live consulting work may have evidence regarding the degree of skill that his consulting projects required; the degree of control, if any, that Leidos Health exercised over the independent consultants on site during the projects; the orientation program that each medical facility provided for the go-live consultants; the customer-required attire for consultants, if any; and Plaintiff's attendance and job performance.  Leidos Health is not yet in a position to identify which particular Franciscan Health employees might have evidence relevant to Plaintiff's claims, or whether those employees would be willing to appear voluntarily for trial proceedings in

---

[5] Mr. Oshikoya accepted consulting projects for Franciscan Alliance in Greenwood (Johnson County) and Indianapolis (Marion County), both of which are located in the Southern District of Indiana.  Aduana Decl. ¶ 5; 28 U.S.C. § 94(b)(1) (placing Johnson and Marion Counties in the Southern District of Indiana).  He accepted a third project in Munster (Lake County), which is located in the Northern District of Indiana.  Aduana Decl. ¶ 5; 28 U.S.C. § 94(a)(3) (placing Lake County in the Northern District of Indiana).

Virginia, and, indeed, the fact that this Court lacks the authority to compel Franciscan Health employees in Indiana to appear for trial in Virginia favors transfer.  Fed. R. Civ. P. 45(c)(1)(A).

Consequently, the convenience of third-party witnesses favors transfer to the Southern District of Indiana.[6]

### D.    The Interests Of Justice Favor Transfer.

The Court's consideration of the "interests of justice" in weighing a transfer motion under Section 1404(a) is "intended to capture all those factors unrelated to witness and party convenience."  *Newman.*, 2012 WL 1414859, at *2 (granting motion to transfer FLSA case to District of Massachusetts) (citing *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.,* 219 F. Supp. 2d 705, 709 (E.D. Va. 2002) (quoting *GTE Wireless v. Qualcomm,* 71 F. Supp. 2d 517, 518 (E.D. Va. 1999))).  Relevant considerations might include "the pendency of a related action; the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment."  *Pragmatus,* 769 F. Supp. 2d at 996 (quoting *Nationwide Mut. Ins. Co. v. Overlook, LLC,* No. 4:10-cv-69, 2010 WL 2520973, (E.D. Va. June 17, 2010)).

Here, the interests of justice favor transfer because the operative events giving rise to this lawsuit occurred primarily in the Southern District of Indiana, and none occurred in Virginia.  As detailed above, Indiana has served as the center of operations for Leidos Health since the Company's formation in 2001, and it is the primary location from which the Company operates

---

[6] Plaintiff also performed consulting work at medical facilities in Michigan, Pennsylvania, North Carolina, and South Carolina.  The convenience of any witnesses at these medical facilities is not a factor in the § 1404(a) venue analysis because they have no presumptive connection either to this District or to the Southern District of Indiana.  *Newman v. Advanced Tech. Innovation Corp.*, No. 1:12CV24 JCC/TRJ, 2012 WL 1414859, at *4 (E.D. Va. Apr. 20, 2012) (location of non-party witnesses is a non-factor where proposed transferee forum is just as inconvenient as the transferor forum).

its GLS business.  "When none of the 'operative events in the lawsuit took place in the district in which the action was originally filed, a motion to transfer to the district in which the events occurred is likely to succeed.'"  *Phillips v. Uber Techs., Inc.*, No. 3:15-CV-544-JAG, 2016 WL 165024, at *2 (E.D. Va. Jan. 13, 2016) (quoting *Finmeccanica S.p.A. v. Gen. Motors Corp.*, No. 1:07CV794, 2007 WL 4143074, at *4 (E.D. Va. Nov. 19, 2007)); *Newman v. Advanced Tech. Innovation Corp.*, No. 1:12CV24 JCC/TRJ, 2012 WL 1414859, at *3 (E.D. Va. Apr. 20, 2012) (concluding that proper forum for FLSA case challenging defendant's compensation policies was corporate location where the compensation policies originated).  Consequently, the interests of justice favor having this case proceed in the location where the primary events giving rise to the lawsuit occurred.

This Court has observed that "[w]hen a plaintiff with no significant ties to the Eastern District of Virginia chooses to litigate in the district primarily because it is known as the 'rocket docket,' the interest of justice 'is not served.'"  *Pragmatus*, 769 F. Supp. 2d at 997.  Even a cursory review of the Leidos Health website indicates that the GLS business is located in Westfield, Indiana, making the Southern District of Indiana the obviously appropriate forum for this matter.[7]  It is troubling that despite this easily accessible information, the Plaintiff chose to bypass the forum with the greatest interest in the matter (the Southern District of Indiana) and file the lawsuit in a forum with absolutely no connection with the operative facts alleged in the Complaint (the Eastern District of Virginia).

---

[7] *See* Go Live Support Fact Sheet, *available at* https://cdn2.hubspot.net/hubfs/2530197/docs/fact-sheet/go-live-support-fact-sheet.pdf?__hssc=232614400.8.1504539831226&__hstc=232614400.78d7d6b88cdbcada3f7ce228d19cbd9e.1502810402018.1502810402018.1504539831226.2&__hsfp=708680514&hsCtaTracking=b0af6dda-bfb0-42d3-a4c6-49a097ab94c4%7C053d16c7-8ec9-46a1-933b-6e6a4c2da025 (last visited Sep. 4, 2017).

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that the Court enter an order granting their motion to transfer, transferring this case to the United States District Court for the Southern District of Indiana, Indianapolis Division, and granting such further relief as the Court deems proper and just.

Date:  September 5, 2017

Respectfully submitted,

  /s/  *Christopher E. Humber*

Christopher E. Humber, VA Bar No. 87195
Zachary S. Stinson, VA Bar No. 79110
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, D.C.  20006
Phone:  202.887.0855
Fax:  202.887.0866
chris.humber@ogletree.com
zach.stinson@ogletree.com

*Counsel for Defendant, Leidos Health, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 5, 2017, I caused a copy of the foregoing to be served on the

following counsel of record for Plaintiff via the Court's ECF system:

Kristi C. Kelly, VSB No. 72791
Andrew J. Guzzo, VSB No. 82170
KELLY & CRANDALL PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Tel:  (703) 424-7572
Fax:  (703) 591-0167
kkelly@kellyandcrandall.com
aguzzo@kellyandcrandall.com


Harold Lichten (Mass. BBO #549689)
Olena Savytska (Mass. BBO #693324)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel:  (617) 994-5800
Fax:  (617) 994-5801
hlichten@llrlaw.com
osavytska@llrlaw.com

Sarah R. Schalman-Bergan (PA 206211)
Eric Lechtzin (PA 62096)
Camille Fundora (PA 312533)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604
sschalman-bergen@bm.net
elechtzin@bm.net
cfundora@bm.net


David M. Blanchard
BLANCHARD & WALKER, PLLC
221 N. Main Street, Suite 300
Ann Arbor, MI 48104
Tel:  (734) 929-4313
blanchard@bwlawonline.com

Respectfully submitted,

  /s/  Christopher E. Humber
Christopher E. Humber, VA Bar No. 87195
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, D.C.  20006
Phone:  202.887.0855
Fax:  202.887.0866
chris.humber@ogletreedeakins.com

*Counsel for Defendant, Leidos Health, LLC*

31108498.1